UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALVIN REED,

        Plaintiff,

    -against-

P.O. ANDRE LOGAN, et al.,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/28/25__

22-CV-10446 (JPC) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. JOHN P. CRONAN**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Calvin Reed, proceeding pro se and *in forma pauperis*, alleges that a group of New York State parole officers assaulted and beat him without provocation. Now before me for report and recommendation (*see* Dkt. 10) is defendants' renewed motion to dismiss this action pursuant to Fed. R. Civ. P. 41(b) and 16(f) for lack of prosecution and failure to comply with discovery and scheduling orders. (Dkt. 76.) Defendants contend that dismissal is warranted because plaintiff failed to appear for five scheduled court conferences and disregarded two successive court-ordered deadlines to respond to their written discovery demands. *See* Def. Mem. (Dkt. 78) at 2-5; Ramage Decl. (Dkt. 77) ¶¶ 3-15. However, as defendants acknowledge, plaintiff met his third and final court-ordered deadline by serving his written discovery responses on August 12, 2024, after which he appeared for his deposition as noticed on September 26, 2024. Ramage Decl. ¶¶ 16-17.

Although plaintiff's chronic inability to comply with this Court's scheduling and discovery orders obliged defendants to attend multiple pretrial conferences – and required them to expend extra time and effort obtaining written discovery responses that should have been provided earlier – discovery has now been concluded, and this action is ready for summary judgment or trial. For this reason, among others, I recommend, respectfully, that defendants' motion be denied and that plaintiff's claims be adjudicated on the merits.

**Plaintiff's Claims**

In his Second Amended Complaint (SAC) (Dkt. 36 at ECF pp. 3-12), plaintiff alleges that on September 13, 2019, he reported to the Bronx Area III Parole Office to see his parole officer, defendant Andre Logan. SAC at ECF p. 6. While plaintiff was in P.O. Logan's office, signing papers, Logan grabbed his arm, causing plaintiff to "yell." *Id*. Other parole officers and supervisory personnel, including defendants Miguel Medina and Shanavia Dandridge, then ran into the room, where they "used batons to make me bend and fall in order for them to handcuff me," and "continued beating me while lying on the floor without provocation." *Id*. Defendant Nydia Garcia, an Area Supervisor, "had an affirmative duty to intercede but she didn't." *Id*.

After the assault, plaintiff alleges that he was transported to the Edgecombe drug treatment facility, where a nurse asked him if he had any injuries. SAC at ECF p. 7. Plaintiff kept silent, because P.O. Logan "stared at me hoping I would say no as he warned me," *id*., and consequently did not receive any medical treatment. Plaintiff further alleges that, as a result of the assault, he experienced physical pain and emotional distress, and later developed a Baker's cyst behind his left knee. *Id*. at ECF pp. 7, 10. Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his rights under the Fourth, Eighth, and Fourteenth Amendments. *Id*. at ECF p. 4.

**Procedural History**

This action was opened on December 8, 2022, after the Hon. John P. Cronan, United States District Judge, severed plaintiff's claims arising from the alleged September 13, 2019 incident from his claims against other defendants, arising from other incidents. (*See* Dkts. 1, 2, 3.) On May 23, 2023 – after defendants were served – I scheduled an initial case management conference for August 15, 2023. (Dkt. 25.) Plaintiff attended that conference by telephone from the Fishkill Correctional Facility, where he was then incarcerated. (*See* Dkts. 32, 33.) On October 3, 2023,

2

plaintiff filed the SAC, which the Court accepted as his operative pleading. (Dkt. 38.) On October 25, 2023, defendants answered the SAC, denying any misconduct. (Dkt. 39.)

On October 30, 2023, I issued a case management order, setting certain preliminary discovery deadlines, and scheduled a status conference for January 18, 2024, to discuss "the completion of written discovery and the scheduling of fact depositions." 10/30/23 Order (Dkt. 40) at 1. By then, plaintiff had been released from prison and was residing in the Bronx. *Id.* at 2.[1] On November 27, 2023, defendants served their Local Civil Rule 33.2 discovery responses, as well as their Fed. R. Civ. P. 26(a)(1) initial disclosures, their first set of document requests, and their first set of interrogatories. Ramage Decl. ¶ 3.

On January 18, 2024, defendants' counsel appeared for the status conference as required, but plaintiff did not. *See* 1/18/24 Order (Dkt. 43) at 1. When the Court's staff reached plaintiff by telephone, he stated that he was unaware of the conference. *Id.* During the conference (which proceeded without plaintiff), defendants reported that they had not yet received any responses to their document demands and interrogatories. *Id.*; *see also* Ramage Decl. ¶ 6. Consequently, I scheduled a second conference for February 1, 2024, at 11:00 a.m., and warned: "***Should plaintiff again fail without excuse to appear at a scheduled court proceeding, fail to meet his discovery deadlines, or otherwise fail to comply with this Court's orders, substantial sanctions could be imposed, including the dismissal of his case***." 1/18/24 Order at 1-2 (all emphases in original unless otherwise noted).

---

[1] Plaintiff remained out of custody throughout the discovery period and the briefing of defendants' renewed motion to dismiss. However, in a letter received September 9, 2025, plaintiff advised the Court that he was once again detained, this time at Rikers Island. (*See* Dkt. 83.) According to the website maintained by the New York City Department of Correction, plaintiff has been in that facility since July 21, 2025. *See* https://a073-ils-web.nyc.gov/inmatelookup/pages/home/home.jsf (last visited October 28, 2025).

On January 19, 2024, counsel for defendants called plaintiff, who returned the call. Ramage Decl. ¶¶ 8-9. Counsel verified that plaintiff had received defendants' disclosures and demands, and "reminded Plaintiff that his discovery response was past-due and that he needed to provide responses as soon as possible." *Id*. Counsel also reminded plaintiff about the February 1, 2024 status conference. *Id*. However, on the morning of February 1, 2024, plaintiff called the Court's Pro Se Intake Unit to report that he might not arrive on time due to a conflicting appointment. *See* 2/1/24 Order (Dkt. 44) at 1. At 11:15 a.m. – with no sign of plaintiff – the conference proceeded without him. *Id*. Defendants again reported that they had received no discovery responses (or requests) from plaintiff. Consequently, I ordered plaintiff to respond to defendants' written discovery requests by March 1, 2024, and warned that if he failed to do so "***sanctions may be imposed***." *Id*. Additionally, I directed the parties to serve any additional written discovery requests by March 1, 2024; warned plaintiff that, if he failed to meet that deadline, "***he may be deemed to have waived the right to seek written discovery in this action***"; and set May 1, 2024 as the date by which all fact discovery was to be concluded. *Id*. I then scheduled a conference for May 6, 2024, and warned: "***Should plaintiff miss a third conference without excuse, the Court will entertain a motion by defendants to dismiss the case pursuant to Federal Rule of Civil Procedure 41(b)***." *Id*. at 2.

Plaintiff failed to respond to defendants' discovery requests by the deadline set forth in the 2/1/24 Order. Ramage Decl. ¶ 10. On March 5, 2024, defendants sent him a deficiency letter. *Id*. ¶ 11; *see also* Dkt. 45-1 (deficiency letter). On March 19, 2024 – still having received no discovery responses from plaintiff – counsel for defendants called again. Ramage Decl. ¶¶ 12-13. Plaintiff confirmed that he received the March 5 deficiency letter but, "due to a family tragedy, had not yet

responded." *Id*. ¶ 13. Counsel advised plaintiff that if he needed more time, he should request an extension from the Court. *Id*.

On March 20, 2024, defendants wrote to the Court, attaching their deficiency letter and describing plaintiff's continued failure to provide discovery. (Dkt. 45.) Plaintiff did not respond. On March 27, 2024, I issued an order concluding that plaintiff "has waived his right to serve additional written discovery requests in this action," but granting him an extension, through April 15, 2024, of his deadline to respond to defendants' written discovery requests. 3/27/24 Order (Dkt. 46) at 2. In the same order, I reminded plaintiff that "it is his responsibility . . . to comply with the extended [discovery] deadlines set by the Court." *Id*. I continued:

> Plaintiff is further reminded that the Court has scheduled a status conference for **May 6, 2024, at 11:00 a.m.,** in Courtroom 20A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, which plaintiff must attend in person. *See* 2/1/24 Order, at 2. The pre-conference status letter is due no later than **April 29, 2024.** *Id.*

> If plaintiff believes that compelling circumstances warrant a further extension of his discovery deadlines, or needs to postpone or reschedule a conference or other court appearance, he must first contact defendants' attorney to request defendants' consent to the extension or adjournment, and then *write to the Court* to request its approval for the extension or adjournment. Plaintiff must do these things *before* the deadline expires or the court proceeding takes place.

*Id*.

Plaintiff failed to provide any written discovery responses by the second extended deadline set by the Court. Ramage Decl. ¶ 14. On May 2, 2024, defendants' counsel called plaintiff, but the call "went unanswered and the voice mailbox was full," so that no message could be left. *Id*. ¶ 15.

On May 6, 2024, plaintiff once again failed to appear for the scheduled status conference. *See* 5/6/24 Order (Dkt. 51) at 1. Noting that this was "the third conference in a row that plaintiff has failed to attend," and that he "has also failed to serve any response to defendants' written discovery requests, despite two extensions granted by this Court," I authorized defendants to "file

5

a motion to dismiss this action for failure to prosecute, under Fed. R. Civ. P. 41(b), and/or for failure to comply with this Court's orders, under Fed. R. Civ. P. 16(f)." *Id.* Defendants filed their motion on May 20, 2024. (Dkt. 52.)

Plaintiff then wrote a letter to the Court, dated June 10, 2024, requesting a further extension of time to serve his discovery responses and explaining that he missed the May 6, 2024 status conference, and failed to serve his discovery responses, due to the death of his fiancée in March 2024, which required him to move out of her apartment into a shelter, combined with the stresses of unemployment, an unspecified illness, and his inability to obtain counsel to represent him. Pl. 6/10/24 Ltr. (Dkt. 56) at 1-2; *see also* Dkt. 57 (similar letter dated June 17, 2024).[2] On July 16, 2024, "as an exercise of discretion," I granted plaintiff's request for yet another extension of his deadline to respond to defendants' written discovery responses, giving him 30 days – until August 15, 2024 – to do so, and holding defendants' motion to dismiss in abeyance until that date. 7/16/24 Order (Dkt. 66) at 2. I then warned: **"No further extensions of this deadline will be granted.** If plaintiff fails yet again to meet his discovery obligations, he will not be given any further chances." *Id*.

On August 12, 2024, defendants' counsel "received written responses to Defendants' interrogatories and demands to produce from Plaintiff via U.S. Mail." Ramage Decl. ¶ 16. On August 26, 2024 – at defendants' request – I extended the fact discovery deadline to November 30, 2024, so that they could take plaintiff's deposition. (Dkt. 68.) On September 26, 2024, plaintiff

---

[2] On July 2, 2024, plaintiff filed an application for the Court to request pro bono counsel on his behalf, reporting that he had "called and reached out to several attorneys but with no avail." (Dkt. 62 at ECF p. 2.) On July 8, 2024, I denied the application, without prejudice to renewal, noting that the case was "stalled" due to "plaintiff's failure to respond to defendants' interrogatories or serve his own discovery requests," and consequently that "the Court [was] not in a position to conclude that plaintiff's claims have substance." (Dkt. 63 at 2.)

appeared for his deposition, Ramage Decl. ¶ 18, and answered questions for approximately five hours. (*See* Dkt. 73 at 1, 175.) On October 11, 2024, I deemed defendants' motion to dismiss withdrawn, without prejudice to renewal, but warned plaintiff – again – that, "given his prolonged inaction and multiple failures to comply with court orders and deadlines, if he yet again fails to meet his obligations as the plaintiff, he will not be given any further chances." 10/11/24 Order (Dkt. 69) at 1.

On December 16, 2024, defendants requested a pre-motion conference regarding their anticipated motion for summary judgment. (Dkt. 71.) I scheduled that conference for January 23, 2025, noting, "This is an in-person proceeding. Plaintiff must appear." (Dkt. 72.) Nonetheless, on January 23, 2025, plaintiff failed to appear for the pre-motion conference. *See* 1/23/25 Order (Dkt. 74) at 2. Instead, less than one hour before the start of the conference, he telephoned the Pro Se Intake Unit to report that he "would be unable to attend and needed to reschedule." *Id*.

I adjourned the pre-motion conference to January 29, 2025, again noting, "This is an in-person proceeding. Plaintiff must appear." 1/23/25 Order at 3. Additionally, I explained that plaintiff's "chronic inability to comply with this Court's scheduling orders, coupled with his repeated failure to request extensions or adjournments *in advance*, has inflicted substantial and unfair burdens on defendants' counsel, the Court, its staff, and other litigants, whose cases could not be scheduled because the Court set time aside for Mr. Reed." *Id*. at 2-3. I therefore authorized defendants to "seek monetary sanctions from plaintiff, pursuant to Fed. R. Civ. P. 16(f)(1)(A)-(C), to reimburse them for their reasonable expenses, including attorneys' fees, incurred in preparing for and (if applicable) traveling to today's conference." *Id*.

On January 29, 2025, defendants appeared through counsel for the rescheduled pre-motion conference but plaintiff – for the fifth time – failed to appear. *See* 1/29/25 Order (Dkt. 75) at 1.[3] At the conference, defendants informed the Court that they did not intend to seek monetary sanctions against plaintiff because he is indigent, "and thus any such sanction would be futile and not in the interest of justice." Def. Mem. at 5. Instead, they requested leave to renew their motion to dismiss, which I granted. *Id.*

### The Motion to Dismiss

Defendants timely filed their renewed motion on March 5, 2025. They argue that plaintiff's delays in providing discovery and multiple failures to appear at court conferences have "severely and unnecessarily delayed this litigation" and resulted in "severe and continuous prejudice to Defendants," warranting a dismissal with prejudice. Def. Mem. at 1, 12.

On March 25, 2025, plaintiff timely filed an opposition letter, arguing primarily that defendants should be required to produce the "body worn footage" from the incident on September 13, 2019. Pl. Opp. (Dkt. 79) at ECF pp. 1-2.[4] Plaintiff does not meaningfully address his multiple failures to appear in court, except to say that he is "physically unstable and still continue[s] being treated," and has been unable to find counsel to represent him. *Id.* at ECF p. 2.

In a short reply memorandum, filed on April 17, 2025, defendants argue that plaintiff's "pattern" is to "display[] a complete disregard for the rules, schedules, and orders of the Court until the Defendants move for dismissal, wherein Plaintiff magically appears via letter just long enough to ask that his case not be dismissed." Def. Reply (Dkt. 80) at 2. Because – they say – this pattern

---

[3] In fairness, however, I note that my 1/23/25 Order, scheduling the January 29, 2025 conference and directing plaintiff to appear in person, was not mailed by the Clerk's Office until January 27, 2025, and thus likely did not arrive in time to notify plaintiff of his obligation.

[4] During the discovery period in this case, plaintiff did not serve any requests for body-worn camera footage. Nor did he serve any other discovery requests.

is unlikely to change, defendants "implore the Court to disregard Plaintiff's transparent last-ditch attempt to salvage his case, finally hold him responsible for his (in)actions, and dismiss this case, with prejudice." *Id*. at 2-3. Defendants do not request any lesser sanctions.

## Legal Standards

Rule 41(b) ("Involuntary Dismissal") provides that if a "plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Rule 16(f) ("Sanctions") provides that the court may issue "any just orders," including orders authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 37(b) ("Failure to Comply with a Court Order") provides that if a party "fails to obey an order to provide or permit discovery," the court may issue "further just orders," including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

Notwithstanding the broad language used in Rules 41(b) and 16(f), the Supreme Court has held that discovery misconduct is properly sanctioned (if at all) under Rule 37(b):

> In our opinion, whether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery by listing a variety of remedies which a court may employ as well as by authorizing any order which is "just."

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 207 (1958). Thus, in *Salahuddin v. Harris*, 782 F.2d 1127 (2d Cir. 1986), the Second Circuit rejected the argument that Rule 41(b) could be relied upon to dismiss a pro se plaintiff's complaint as a sanction for his refusal to continue with his deposition. *See id*. at 1134 ("Rule 41(b) cannot be applied in this manner."); *see also*, *e.g.*, *Rivera v. Jeziosky*, 2007 WL 913990, at *5 (W.D.N.Y. Mar. 23, 2007) ("Rule 41(b) sanctions are not available because the issue here is a discovery notice that plaintiff is disregarding."); *Gonzalez v. City of New York*, 354 F. Supp. 2d

9

327, 347-48 (S.D.N.Y. 2005) (denying Rule 41(b) motion based on plaintiffs' failure to respond adequately to interrogatories or produce a witness for deposition, because these failures "relat[e] to the discovery phase of litigation, rather than to an aspect of the trial.").

Regardless of which rule the court employs, dismissal is a harsh remedy, to be utilized "only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quoting *Theilmann v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2d Cir. 1972)) (Rule 41(b)); *accord Salahuddin,* 782 F.2d at 1132 (quoting *Israel Aircraft Indus., Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2d Cir. 1977)) (Rule 37(b)); *Guallpa v. New York Pro Signs Inc.*, 2013 WL 2149569, at *1 (S.D.N.Y. May 17, 2013) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988)) (Rule 16(f) and Rule 37(b)).

Courts should be particularly reluctant to dismiss the claims of pro se plaintiffs, who are afforded "more lenient treatment than those represented by counsel[.]" *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988); *see also Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (counseling district courts to be "especially hesitant to dismiss for procedural deficiencies where . . . the failure is by a pro se litigant."); *Salahuddin*, 782 F.2d at 1132 ("[*P*]*ro se* plaintiffs do in fact often 'frustrate the processes of litigation,' but dismissal is justified only when they do so deliberately, not when they do so 'through misunderstanding.'") (quoting *Weiss v. Bonsal,* 344 F.2d 428, 430 (2d Cir. 1965) (per curiam)). However, pro se parties, like all litigants, "have an obligation to comply with court orders. When they flout that obligation they . . . must suffer the consequences of their actions." *McDonald*, 850 F.2d at 124.

In our Circuit, a district court considering a Rule 41(b) dismissal weighs five factors:

(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest

10

in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (per curiam) (quoting *Lucas*, 84 F.3d at 535). No single factor is dispositive. *Id*.

When considering a dismissal pursuant to Rule 37(b), the court weighs: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted). The Rule 16(f) standard is "identical." *Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997); *see also*, *e.g.*, *Milhouse v. City of New York*, 2023 WL 5487921, at *3 (S.D.N.Y. Aug. 1, 2023), *adopted,* 2023 WL 5475846 (S.D.N.Y. Aug. 24, 2023); *Lopa v. Safeguard Props. Mgmt., LLC*, 2018 WL 3019875, at *1 (E.D.N.Y. June 18, 2018).

While these factors overlap considerably with those used under Rule 41(b), it is well-settled in our Circuit that the more drastic sanctions available under Rule 37(b), including dismissal, may not be imposed for delays occasioned by mere "sloppiness or negligence." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,* 694 F.3d 155, 160 (2d Cir. 2012). "The sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent." *Salahuddin*, 782 F.2d at 1132 (quoting *Societe Internationale,* 357 U.S. at 212).

## Analysis

Defendants' renewed motion to dismiss this action relies heavily on plaintiff's delay in serving his responses to their written discovery requests, which – they say – "paused litigation for ten months." Def. Mem. at 8. As noted above, plaintiff's failure to comply with this Court's first

11

two orders directing him to serve those responses is properly analyzed under Rule 37(b). *Societe Internationale*, 357 U.S. at 207; *Gonzalez*, 354 F. Supp. 2d at 347-48. While plaintiff's lackadaisical approach to his discovery obligations undoubtedly frustrated defendants (as it did this Court), it would be an abuse of discretion, on the present record, to dismiss this action because of plaintiff's discovery delays.

First, I cannot conclude that plaintiff's conduct was "willful." He told defendants' counsel in March 2024 that his failure to respond to their discovery requests was due to a "family tragedy," Ramage Decl. ¶ 13, presumably the death of his fiancée that month. He later explained, in writing, that this tragedy was compounded by the loss of the home they shared, which required him to move into a shelter; an unspecified illness; and his inability to obtain pro bono counsel. *See*, *e.g*., Pl. 6/10/24 Ltr. at 1 ("Between [m]oving, arranging her funeral, [p]acking up my belongings and becoming sick, I am profoundly sorry for being unresponsive."). Giving plaintiff the benefit of the doubt – albeit with some reluctance – I extended his deadline to serve his discovery responses a third and final time, to August 15, 2024. 7/16/24 Order at 2. Plaintiff met that deadline, mailing his written discovery responses (which defendants do not contend to be inadequate) in time for defendants' counsel to receive them on August 12, 2024. Ramage Decl. ¶ 16. Plaintiff then appeared for his deposition as noticed on September 26, 2024. *Id*. ¶ 17. At no time did plaintiff refuse to provide any requested discovery, or provide an excuse that defendants contend to be false. Thus, the delays of which defendants complain were due at worst to "sloppiness or negligence," *World Wide Polymers,* 694 F.3d at 160, rather than "willfulness," *Agiwal*, 555 F.3d at 302, as required for a Rule 37(b) dismissal. *See Peterson v. Mejia,* 2010 WL 3855364, at *3 (S.D.N.Y. Oct. 1, 2010) (denying motion to dismiss where pro se plaintiff gave unconvincing

reasons for his initial failure to comply with his court-ordered deadline to execute a release, but later made an "attempt to fully execute the release," precluding a finding of willfulness).

Second, it appears that lesser sanctions *were* effective in inducing plaintiff to honor his written discovery obligations. *See* Def. Mem. at 10 (noting that the Court's 4/15/24 Order cut off plaintiff's right to request additional discovery from defendants). Moreover, discovery is now complete, and the case is poised for summary judgment or trial. There is thus no need for further sanctions to enforce the Court's discovery orders.

Third, defendants are exaggerating "the duration of the period of noncompliance." *Agiwal*, 555 F.3d at 302. They served their document demands and interrogatories on November 27, 2023. Ramage Decl. ¶ 3. The Court then gave plaintiff three successive deadlines to respond: March 1, 2024; April 15, 2024; and August 15, 2024. 2/1/24 Order at 1; 3/27/24 Order at 1; 7/16/24 Order at 2. Plaintiff failed to comply with the first two deadlines, but he obeyed the 7/16/24 Order and served his responses by August 12, 2024. Ramage Decl. ¶ 16. In total, therefore, plaintiff's noncompliance with this Court's discovery orders delayed the competition of written discovery by approximately five and a half months, from March 1 to August 12, 2024. *See Peterson,* 2010 WL 3855364, at *2 (calculating delay "from the court-ordered deadline" to the time plaintiff sent defendants the executed release). A five-and-a-half month delay is not so egregious as to warrant the "drastic penalty" of dismissal, *Salahuddin,* 782 F.2d at 1132, particularly where the deficiency has been remedied and the discovery has been provided. I note as well that defendants do not claim to have suffered any particular prejudice as a result of plaintiff's late service of his written discovery responses, "beyond the delay itself." *LeSane*, 239 F.3d at 210 (reversing dismissal where defendant did not show that the delay caused by plaintiff "reduced . . . their likelihood of success on the merits," "perhaps due to decaying evidence"); *see also Peterson*, 2010 WL 3855364, at *3

(denying motion to dismiss where pro se plaintiff's delay in furnishing releases "merely temporarily stalled the progress of this litigation.").

As to the fourth *Agiwal* factor, defendants are correct that plaintiff was "repeatedly warned" of the consequences of noncompliance. Def. Mem. at 8. In this case, however (unlike the cases on which they rely), those warnings worked, at least insofar as they induced plaintiff to meet his third and final written discovery deadline, *see* 7/16/24 Order at 2, and thereafter appear for deposition without further judicial prompting. Once discovery was complete, I deemed defendants' initial motion to dismiss withdrawn. *See* 10/11/24 Order at 1. Having done so, I cannot now, in fairness, rely on plaintiff's long-cured discovery deficiencies to recommend that their renewed motion be granted.

Plaintiff's continued failure to appear for court conferences – including the pre-motion conference scheduled for January 23 and rescheduled for January 29, 2025 – presents a closer question. I analyze this aspect of defendants' motion under Rule 41(b) and Rule 16(f). As to the first and second *Baptiste* factors, defendants are correct that plaintiff's persistent failures to appear in court spanned a full year, which is a "significant duration," Def. Mem. at 8, and that he was repeatedly warned, during that year, that further such failures could result in the dismissal of his case. *See* 1/19/24 Order at 1-2; 2/1/24 Order at 2; 3/27/24 Order at 2; 10/11/24 Order at 1. Nonetheless, he failed to appear twice in January 2025. Moreover, although plaintiff was clearly instructed as to how to seek an adjournment, *see* 3/27/24 Order at 2 ("he must first contact defendants' attorney to request defendants' consent to the extension or adjournment, and then ***write to the Court*** to request its approval for the . . . adjournment"), he made no effort to adjourn the January 23 conference until approximately one hour before it commenced, at which point he telephoned the Pro Se Intake Unit to report that he had a "scheduling conflict," thereby inflicting

14

"unfair burdens on defendants' counsel, the Court, its staff, and other litigants, whose cases could not be scheduled because the Court set time aside for Mr. Reed." 1/23/25 Order at 2-3.

However, as noted above, the 1/23/25 Order, which rescheduled that day's conference for January 29, 2025, and directed plaintiff to appear in person, very likely did not reach him until after the January 29 conference took place. It is thus difficult to fault plaintiff for his most recent failure to appear in court when required. Further, the remaining *Baptiste* factors weigh against dismissing this action as a sanction for plaintiff's non-appearance in January 2025.

Defendants argue that they "have been, and continue to be, prejudiced by the fact that they are forced to expend time and resources to defend this action and repeatedly appear before the Court through counsel while Plaintiff fails to appear or otherwise participate." Def. Mem. at 9. For Rule 41(b) purposes, however, the court properly considers only "prejudice likely to result from future delays," not "prejudice as a result of prior delays." *Gone v. Wackenhut Servs., Inc.*, 2011 WL 2610550, at *4 (S.D.N.Y. June 17, 2011); *see also Baptiste*, 768 F.3d at 216 (court must weigh "whether the defendants are likely to be prejudiced by *further* delay in the proceeding") (emphasis added). In this case, discovery is now complete, and plaintiff is incarcerated, making him subject to production by prison officials for court appearances. There is thus "no appreciable risk of further delay." *Mercado v. Choyang Med. Co.*, 2014 WL 3014456, at *3 (E.D.N.Y. July 3, 2014) (denying Rule 41(b) motion where "discovery [was] complete" by the time the district judge ruled on the motion)[5]; *see also Franco v. HMS Host Corp.*, 2010 WL 11627256, at *3-4 (E.D.N.Y. June 2,

---

[5] In *Mercado*, the plaintiff failed, for almost a year and a half, to produce admissible medical documentation of her alleged damages, in violation of two successive scheduling orders. The second order expressly warned her that if she did not submit the documentation by March 15, 2014, "the case will be dismissed." 2014 WL 3014456, at *1. When Mercado failed to meet that deadline, the magistrate judge recommended that her case be dismissed pursuant to Rule 41(b). *Id*. at *1-2. Two weeks later, Mercado "attached the long overdue medical documentation" to the objections that she filed to the magistrate judge's recommendation. *Id*. at *2. Notwithstanding that

15

2010) (denying Rule 41(b) motion where plaintiff failed to appear for his deposition when it was initially noticed, and then persistently failed to pay the resulting monetary sanction, but "appeared at his rescheduled deposition," such that "discovery is now complete").

Likewise, defendants make no showing that this case has "strained [the Court's] docket in any unusual way." *Baptiste*, 768 F.3d at 218. Like the plaintiff in *Baptiste*, plaintiff Reed's failures were all failures of omission, not commission: "he did not swamp the court with irrelevant or obstructionist filings." *Id*. (quoting *LeSane,* 239 F.3d at 210). There is thus no "compelling evidence of an extreme effect on court congestion," as required before "a litigant's right to be heard is subrogated to the convenience of the court." *Id*. at 219 (quoting *Lucas,* 84 F.3d at 535-36).

Finally, while this Court previously invited defendants to seek sanctions "less drastic than dismissal," *Baptiste*, 768 F.3d at 216 (quoting *Lucas*, 84 F.3d at 535) (namely, monetary sanctions for plaintiff's non-appearance on January 23, 2025), they declined to do so in light of plaintiff's indigency, and do not now suggest any alternatives to the terminating sanction they seek.[6]

---

her dilatory conduct "wasted public resources and disrupted the court's orderly management of its docket," *id*., the district judge denied the Rule 41(b) motion, reasoning that once the evidentiary record was complete there was no likelihood of "further delay," and that prejudice from the past delay could not "fairly be presumed." *Mercado*, 2014 WL 3014456, at *3.

[6] In many cases, a dismissal without prejudice is a viable "less drastic" sanction for misconduct that does not warrant the permanent deprivation of the plaintiff's day in court. *See, e.g.*, *Ortega v. Mutt*, 2017 WL 1133429, at *2 (S.D.N.Y. Mar. 24, 2017) (finding that, where any prejudice was minor, "the lesser sanction of dismissal without prejudice (rather than with prejudice) is appropriate in order to strike the appropriate balance between the right to due process and the need to clear the docket and avoid prejudice to defendant by retaining open lawsuits with no activity.") (citation omitted). In this case, however, the three-year statute of limitations applicable to plaintiff's § 1983 claims, *see Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108, 111 (2d Cir. 2023), has long run, such that any dismissal, at this point, would effectively be a dismissal with prejudice.

**Conclusion**

After considering "the record as a whole," *Baptiste*, 768 F.3d at 216, I recommend, respectfully, that defendants' renewed motion to dismiss this action for lack of prosecution and failure to comply with discovery and scheduling orders (Dkt. 76) be DENIED, and that defendants be given 30 days from that ruling to file their motion for summary judgment.

The Clerk of Court is respectfully directed to close the motions at Dkts. 76 and 79.

Dated: New York, New York
       October 28, 2025

_____
**BARBARA MOSES**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. John P. Cronan, and delivered to Judge Cronan in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Cronan. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

17